PEOPLE v. GILBERT.

1. CRIMINAL LAW—PRACTICING MEDICINE WITHOUT A LICENSE—EVIDENCE.
    In prosecution for practicing medicine without a license, the people's testimony *held*, ample to submit to jury the question of fact whether defendant, a licensed cosmetologist without the usual cosmetologist's equipment in his office, was guilty of a violation of the statute, hence motion to dismiss at close of the people's proofs was properly denied (2 Comp. Laws 1929, §§ 6743, 6745).

2. SAME—COLLOQUY IN PRESENCE OF JURY—ADMISSION OF EVIDENCE.
    It was not prejudicial error to hold colloquy, in the presence of the jury, between court and counsel, arising from defendant's objection to certain questions regarding an advertisement which appeared in newspapers subsequent to last date mentioned in information charging that defendant practiced medicine without a license, where argument was on a question

of law and no part of the advertisement was read or given to the jury and defendant's objection was sustained (2 Comp. Laws 1929, §§ 6743, 6745).

3. SAME—GENERAL PLAN—EVIDENCE OF ACTS NOT COVERED BY PERIOD CHARGED IN INFORMATION.

In prosecution for practicing medicine without a license wherein defendant presented a witness who testified she had received treatments for specified skin troubles during a period prior to that covered by the information, it was not reversible error to permit cross-examination of such witness relative to acts by defendant or by others in defendant's office immediately prior or subsequent to the period covered by the information in order to show a general scheme or plan followed by defendant (Comp. Laws 1929, §§ 6743, 6745, 17320).

4. SAME—PROSECUTOR'S ARGUMENT—CURING ERROR.

Reversible error did not occur during prosecutor's argument where one statement to which objection was made was withdrawn and at other times the objection was sustained or the argument not pursued by the prosecutor and no further request to charge the jury was made by counsel.

5. SAME—REQUESTS TO CHARGE—PRACTICING MEDICINE WITHOUT A LICENSE—COSMETOLOGIST.

Failure to give requests to charge which were argumentative or which were plainly designed so as to be open to more than one construction was not error in a criminal case where jury was fairly and completely advised as to the law of the case, defendant's claims and his rights under the cosmetology statute under which he was licensed and claims to have been acting and the statute relative to practicing medicine with violation of which he was charged (2 Comp. Laws 1929, §§ 6743, 6745; Act No. 176, Pub. Acts 1931, as amended by Act No. 323, Pub. Acts 1937).

Appeal from Recorder's Court for the City of Detroit; Skillman (W. McKay), J. Submitted July 6, 1945. (Docket No. 68, Calendar No. 42,789.) Decided October 8, 1945. Rehearing denied December 3, 1945.

Neil E. Gilbert was convicted of practicing medicine without a license. Affirmed.

*Alan N. Brown* (*Meyer Weisenfeld,* of counsel), for appellant.

*John R. Dethmers,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara,* Assistant Attorney General, for the people.

BOYLES, J. On leave granted defendant appeals from a sentence following conviction by jury in the circuit court for Wayne county, on a charge of practicing medicine without the license required by Act No. 237, § 7, Pub. Acts 1899, as amended (2 Comp. Laws 1929, § 6743 [Stat. Ann. § 14.537]). Admittedly the defendant was not licensed to practice medicine but had a license as a cosmetologist under Act No. 176, Pub. Acts 1931, as amended by Act No. 323, Pub. Acts 1937 (Comp. Laws Supp. 1940, §§ 8714-1–8714-37, Stat. Ann. and Stat. Ann. 1944 Cum. Supp. §§ 18.131–18.167). The argument seems to be whether the defendant was practicing cosmetology under such license, or practicing medicine without a license. The facts shown by the record follow.

The complaining witness, one Elizabeth Jane Heil, was having trouble with her complexion and on October 1, 1942, went to the defendant's office on the second floor above a drugstore at Woodward and Warren in Detroit. There was a sign below at the stairway entrance as follows:

"Clear Skin Institute, Second Floor"

On the door of defendant's office was the name "Clear Skin Institute" and defendant's name was on the inside with a suffix "N.D." There were a number of diplomas on the wall of the office. After she was seated in his office, the defendant asked her name and address, where she worked, whether she

had gone to any doctors, whether she had been sick within the last year, whether she menstruated regularly or had trouble with her bowels. The defendant filled out a form and arrangements were made at that time for her to come twice a week for treatments at $5 per treatment. She paid defendant $12 for two treatments plus $2 for a "registration fee." At that time she received a registration card which she had in her possession for about two and one-half weeks. This card on its face stated:

"I, Neil E. Gilbert, Director of the Clear Skin Institute, hereby agree to treat Miss Betty Jane Heil for a period of 30 days from the above date under the following conditions:

"There shall be no further payments made by her during this period and in event that no improvement is shown in her complexion during this period, I shall refund all and any moneys paid to date for five visits or treatments already received.

"Miss Heil and members of her family shall be the sole judge as to whether or not there has been any improvement. However, if there is improvement, Miss Heil will pay me for whatever visits she received up to that date.

(Signed)<br>
"Neil E. Gilbert."

On the back of this card was the following:

"You are accepted for the 'Dermedic Method' of 'Skin Clarification,' by the Foundation, under the following conditions:

"Appointments should be met at the appointed time, to avoid the possibility of overcrowding.

"If unable to keep your appointment kindly telephone TEmple 1–7800 and a new appointment will be made for you.

"Two consecutive appointments missed without notice cancels this registration.

"This registration covers 'Skin Clarification' only. No medical service or advice is rendered hereunder.

"Clear-Skin Foundation

"10 West Warren cor. Woodward

"Detroit, Michigan

"TEmple 1–7800"

She testified that on the occasion of her first visit the defendant informed her "I had acne, and that he could cure me." Thereafter she received five treatments during two different weeks but her condition did not improve. The treatments consisted in using a lamp and some salve, except the last one at which time the defendant extracted or opened the pimples or blackheads on her face. This treatment hurt her face and she inquired at the Better Business Bureau about the defendant, and then called up the medical association where she learned for the first time that the defendant was not a doctor of medicine. During the course of her treatments, defendant's assistant called him "Doctor." The designation N.D. was on diplomas in his office. After she learned from the Wayne county medical society that defendant was not registered to practice as a doctor, she went again to his office accompanied by her sister Ada Mae and testified the following occurred there:

"I asked him if he wanted to see me. He said, 'Yes, he heard I had been checking up on him,' as he put it, and I said, 'I had.' And, I said, and I said—I asked him if he was a doctor. He said, 'yes, he was.' I said, 'The Wayne county medical society didn't know anything about it.' He said, 'Well, he is a doctor of naturopathy,' and so we were there about 2½ hours, and he offered to give me back $5, but I didn't want it."

This testimony was corroborated by the sister of the complaining witness who accompanied her to the defendant's office on the above occasion and who testified as follows:

"I was present when a conversation was had between the defendant and Betty Jane.

"*Q.* And at that time, what was the substance of that conversation?

"*A.* Well, she wasn't satisfied and she wanted her money, and he wanted her to keep on, and we sat about two hours and it was the same thing over and over, more or less.

"*Q.* Was any statement made by him relative to whether or not he was a doctor?

"*A.* He said he was a doctor.

"*Q.* What else did he say?

"*A.* Well, that; about 10 minutes later he said he wasn't a doctor, then he said he was a doctor and it was naturopath.

"*Q.* Doctor of naturopathy?

"*A.* Yes."

There was further testimony that the defendant in giving treatments to the complaining witness instructed his assistant to apply certain ointments or medicines, that she did so, that the defendant used an instrument to remove the blackheads, that he gave the witness soaps to take home and a medicine or ointment to apply on her face at night. At no time during her visits to defendant's office was any reference made to his being a beauty operator or cosmetologist or anything else but a physician or a medical doctor. There was nothing in defendant's place of business to indicate that he was a cosmetologist, such as beauty tables, manicure tables, hair dryers or any of the usual instruments found in a so-called beauty parlor. There was testimony re-

garding the confusion caused by the similarity between the designations ''N.D.'' and the usual ''M.D.'' designating a doctor of medicine. There was testimony that two certificates of conducting business under an assumed name were on file in the office of the Wayne county clerk. In the first the assumed name was ''Clear Skin Foundation'' filed in 1939, and in the second certificate filed February 6, 1941, the assumed name was given as ''Clear Skin Institute.'' The defendant admits having practiced his profession, whatever it was, under the above assumed names at the addresses given in the certificates.

At the close of the people's case the defendant moved to dismiss on the ground that the people had failed to prove a case of practicing medicine without a license, contrary to the provisions of the statute. The court denied the motion, and the defendant then put in considerable testimony as to the practice of cosmetology and of witnesses who testified that they were well pleased and satisfied with the methods and results of the defendant's treatment. Doctor Shaffer, a licensed physician and surgeon and professor of dermatology and syphilology at Wayne university, a graduate of the University of Michigan medical department in 1917, who had specialized in skin diseases in the department of dermatology and syphilology at Mayo clinic for three years, extramural lecturer for the medical school of the University of Michigan, a director of the Detroit department of health, on the staff of Receiving hospital as attending physician and teaching classes in dermatology and also on the staff of Harper hospital, was called by the people as a witness. After fully qualifying as an expert witness on skin diseases, he testified that acne, ''ordinarily spoken of as pimples,'' was a human ailment which

would be classified as a disease. He also testified that papular acne might be quite similar to secondary syphilis, hard to differentiate even by an ordinary physician without special training in dermatology; "it certainly would require a physician to treat those diseases."

The statute (2 Comp. Laws 1929, § 6743 [Stat. Ann. § 14.537]), on which this charge is predicated states that any person "who shall practice medicine or surgery in this State, or who shall * * * hold himself * * * out to the public as being able to treat, cure or alleviate human ailments or diseases," without a license issued under the act shall be guilty of a misdemeanor. Section 9 of the act (2 Comp. Laws 1929, § 6745 [Stat. Ann. § 14.539]) states that:

"The term 'practice of medicine' shall mean the actual diagnosing, curing or relieving in any degree, or professing or attempting to diagnose, treat, cure or relieve any human disease, ailment, defect, or complaint, whether of physical or mental origin, by attendance or by advice, or by prescribing or furnishing any drug, medicine, appliance, manipulation or method, or by any therapeutic agent whatsoever."

The people's testimony in this case was ample to submit to the jury the question of fact, whether defendant was guilty of a violation of the statute. The motion to dismiss at the close of the people's proofs was properly denied.

On cross-examination of one of defendant's witnesses, the prosecutor asked certain questions regarding an advertisement which appeared in a newspaper published subsequent to the last date mentioned in the information. Defense counsel's request that the trial court hear the argument in the absence of the jury or in chambers was not granted.

Subsequently, the court sustained the objection of defense counsel to the testimony. Appellant claims that the refusal of the trial court to hear the argument in the absence of the jury, and the hearing of the argument in the presence of the jury, was prejudicial error. No part of the advertisement in question was read or given to the jury. The sole reason advanced for reversal is that the argument as to its admissibility was in the presence of the jury. It was on a question of law as to the admissibility of the advertisement, and the court sustained the objection. We find nothing in the record prejudicial to the defendant in the colloquy which took place in the presence of the jury in which the court took part.

The prosecutor was permitted to cross-examine a defense witness concerning X-ray treatments received at defendant's office from a person other than the defendant on a date beyond the last date stated in the information. Appellant contends that this was prejudicial and reversible error. The defendant had introduced the testimony of one Betty Kulczyk who testified that she had been receiving treatments from the defendant for "big, large pimples and blackheads," beginning in August, 1942, prior to the time when the defendant was charged with violating the medical practice act (from October 1 to October 27, 1942). On cross-examination, she testified without objection:

"He (the defendant) did not ask me if I had had X-ray treatments before, he asked me did I take treatments before. My mother or father did not sign any waiver that I know of, permitting the defendant to give me X-ray treatments. I did not sign any waiver for the defendant to give me X-ray treatments. I went once a week from January, and I am still taking X-ray treatments. I think it was

ten. From January of this year up until now, I have had X-ray treatments. I paid $5 for these X-ray treatments. I had them once a week.

"*Q.* Who would give you the X-ray treatments?

"*A.* There's a doctor there, a short man. I don't know his name. I never asked. I knew he was a doctor because he told me he had charge of the clinic; because there is a partition, a little clinic next door. I don't know what is the clinic next door, I never looked to see any name on it."

The record is clear that this witness went to the defendant's office beginning in August, 1942, and paid the defendant himself for all of the X-ray treatments (10 in number), except one time she paid "this other doctor" on a Sunday when the defendant himself was absent. All this was admitted without objection. Subsequently the court on motion struck out some part of the testimony, just what part is not clear. As to the objection made, the defendant's method of having X-ray treatments given to patients or clients who came to his office, and the general scheme or plan followed by him under the designation of "Clear Skin Institute" to treat skin diseases without a license to practice medicine, opened the door to proof of acts immediately prior or subsequent to the period between October 1 and October 27, 1942. 3 Comp. Laws 1929, § 17320 (Stat. Ann. § 28.1050). As to the "other doctor," the court charged the jury:

"Now, there is some talk about a Dr. Koenig. Of course, if there was a Dr. Koenig, there; if he, rather than this defendant committed the acts which are here charged, of course, the defendant wouldn't be found guilty thereof. He couldn't be identified with the acts of a certain Dr. Koenig.

"In other words, in order to come within the provisions of the law, it must be an act in his own per-

sonal capacity, rather than in the act of some doctor who possesses a license. It seems almost axiomatic that would be true there, and I will call your attention to the fact that if there was a doctor there and if he had a license to practice medicine, and if he did the things which are charged, of course, as a doctor of medicine he can do those things. On the other hand, if the defendant did those, he wouldn't have a right to do so, providing those things constitute a practice of medicine without a license, and provided further, that they are not such acts as are permitted under the cosmetology statute.''

We find no reversible error in such cross-examination of this witness.

Defendant claims reversible error in certain instances during the prosecutor's argument to the jury. In one instance the statement was withdrawn; in other instances the objection was sustained or the argument not pursued by the prosecutor. No further request to charge the jury was made by counsel. There was no error in the rulings of the court.

Defendant claims error in the failure or refusal of the court to give certain of the defendant's requests to charge the jury. The requests were argumentative, and some of them were plainly designed so as to be open to more than one construction. We need not discuss them at length. The court charged the jury fully and fairly as to the defendant's claims and the law of the case. The rights of the defendant under the law applying to cosmetologists were carefully explained, together with the defendant's theory of the law of the case as applied to the facts. In conclusion, the court charged the jury:

''Now, the question for you to determine in this case, from the facts, that during the time alleged

in the information, whether what he did constituted the practice of medicine, or whether in lieu thereof it constituted the practice of cosmetology.''

The charge as a whole was fair and complete, and the case was properly submitted to the jury. We find no prejudicial error and the conviction and sentence is affirmed.

STARR, C. J., and NORTH, BUTZEL, BUSHNELL, SHARPE, and REID, JJ., concurred. The late Justice WIEST took no part in this decision.